We'll move now to Appeal 24-1099, Nicodemus v. City of South Bend, and Mr. Falk, we'll begin with you. Thank you, and may it please the Court. People have a first amendment right to be in public and to approach, observe, and record police activity as long as there is no interference. But the statute here, Indiana Code 3544.1-2-14, contains no standards whatsoever and allows individual police officers to create 25-foot floating buffer zones around themselves that can repeatedly be added onto by different officers to push persons back farther and farther away from police activity, including persons like Mr. Nicodemus, who intends to approach, observe, and record, because that's what he does. The Supreme Court has told us in Schenck that 15 feet is beyond normal conversational distance, and Mr. Nicodemus has verified, depending on the circumstances, that it's often difficult or impossible to capture what is happening on his videos from 25 feet. Mr. Falk, let me inquire. The challenge here is a facial challenge, not an as-applied. Is that correct? Yes, Your Honor. And with regard to the theory itself, we have a district court opinion that resolves the matter on substantial overbreath. Yes, Your Honor. We have, obviously, arguments below, similar to the arguments that we have here with regard to intermediate scrutiny, et cetera. Is Mr. Nicodemus offering a substantial overbreath argument or not? No, Your Honor. We have argued consistently the problem with this law is it contains no standards whatsoever to restrain the unfettered discretion of the police. Now, I think if we were in law school, we would then talk about how arguing lack of standards is very similar to saying substantial overbreath. But I think the easier way to look at this is to look at this statute. This statute doesn't have any standards at all. Police, for any reason whatsoever, can say, in effect, get out of my face, move back 25 feet. If you don't, you're under arrest. And other police officers can say, hey, move back farther and farther. And that is a problem, given that lack of standards when it comes to the First Amendment is clearly unconstitutional. This court in Alvarez, like every other… But I think, I guess, I question whether or not we should be pulling off the shelf this notion or those cases dealing with unbridled discretion when we are… I guess we have to premise this first in classifying what type of law is the Indiana buffer law. To get even into the unbridled discretion conversation, is it your contention that this law is content-based or content-neutral, which will help trigger kind of which door we go in next? Sure. I don't think it makes any difference to the end result. But let me answer the question, of course. This court in the Smith case held that when a statute, in this case it was a rule, has no standards and impacts on the First Amendment, it is content-based because the lack of standards allows for content-based decision-making. Now, in other cases, this court has enunciated the reasonable time, place, or matter content-neutral and then said, as a fourth thing, it also contains no standards. I think it makes sense to look at this in the content-based area just because it emphasizes the fact that this is a direct burden on the First Amendment. But I would add, however, let's assume it's not a direct burden. Let's assume it's only an indirect burden on speech and speech activity. What has to be shown? Well, the state still has the burden to show that the statute is not substantially broader than necessary to further a significant state interest. Keeping police from being interfered with in the job they do is a significant state interest. But this statute is way broader than that because it allows police, for any reason, to push people away. Indiana has a statute that allows police to erect, declare an emergency incident zone around an emergency incident, a fire, an accident, an arrest, et cetera. Indiana has a statute that prohibits forcible interference with the police. Certainly, if Indiana wants and feels that there is a need to supplement those statutes with other statutes that protect police from interference, they can do this. But this statute's not that. This statute has no standard whatsoever. And given how important citizen journalists have become in getting close to George Floyd, in getting close to Eric Garner, in reporting in ways that traditional media no longer reports because all of us now are potentially citizen journalists because we all carry cameras in our pockets. Has this ever been used outside of the licensing or permit context, this theory? Which theory, Your Honor? The Smith case. That content-neutral laws can be treated as content-based depending on how it impacts speech. And so I just haven't seen where this theory has been applied outside of licensing or permitting context. I think it's the reverse of kind of what we had in Smith. And so I'm just questioning whether or not this theory has been used this way. Well, in the— The unbridled discretion theory, I'm sorry. Right. In the Supreme Court case that dealt with the inability of persons to wear political clothing in the shoot, in that case—I apologize.  Manski. Thank you. I apologize. It's hard to get old. I apologize. We cited that case, of course. In that case, of course, that was not a licensing case, but the case, the court relied on the unbridled discretion to find that that was unconstitutional. But it seems to me in that case, it did so in the context of the narrowly tailored inquiry. So you don't have to ignore the discretion question, but you look at it when you're trying to figure out whether the state is adequately or appropriately addressing their significant government interest. Well, again, you know, we can argue there's two separate points, whether we apply unbridled discretion or we look at whether it's substantially broader than necessary to meet the second prong of war. We come out with the same answer, right? There are no standards. You are impinging on First Amendment rights here without standards. You have a statute that allows, for any reason, persons to be prohibited from what this court recognized in Alvarez as a constitutional right. I appreciate you focusing us in on unbridled discretion. Is the concern that officers would be more friendly with certain citizen journalists than others in terms of whether it would be enforced? I think there are lots of concerns. I think the concern, of course, is that no one wants to have someone putting them on video or taking pictures of them. And in Houston versus Hill, the Supreme Court made it clear that, unfortunately, police officers have to tolerate people, in that case, yelling at them. I think that there's a concern that there's a lot that will not be discovered, that there's a lot of information out there that would not be obtainable without the ability of persons to get close and observe. It's dark. I can't see very well. I need to get close. I need to get the ID number. I need to be able to see when there are three or four people on the ground. Are they helping that person or are they restraining them to roughly? All of that is lost when you're able to say, go back, go back 25 feet. And as in Mr. Nicky Venus' case, go back another 25 feet. I certainly see the point that you're advocating, Mr. Falk. There are some restrictions. It's got to be a knowing or intentional encroachment. The officer would have to be performing lawful duties. It would have to be after an order to stop approaching. And the way that 44.1.214 is drafted seems to have some restrictions. The question is, do those arise to a level of being unbridled? Yes, Your Honor. I mean, the idea that you have to be lawfully engaged in execution of your duties, that's a defense six months down the road after you've been arrested. That is hardly a standard on the ground that protects you from the First Amendment standpoint. Having to go back 25 feet, obviously that's not a standard. That's the boundary set up by the statute. What about the warning requirement? Well, the warning requirement is basically saying I'm about to violate your constitutional rights, assuming plaintiff is correct, right? Being told that you have to do something which violates your First Amendment before I arrest you for it doesn't mitigate the First Amendment violation at all. Very good. Thank you, Mr. Falk. We'll reserve the remainder of your time. We'll now move Ms. Lawrence to you. May it please the court. We ask this court to affirm the district court's decision that Indiana's encroachment law, which regulates conduct, not speech, does not violate the First Amendment on its face. And that's primarily for two reasons. The first is that Mr. Nicodemus cannot show that the plainly legitimate sweep of the law is substantially outweighed by First Amendment concerns. And second, because insofar as the right to report exists, the encroachment law does not bear upon that right. Now, I want to start with something that my friend on the other side discussed, which was whether we should be getting into the idea of unbridled discretion. And unbridled discretion only comes into play if there is a First Amendment right that is being expressive activity, is either being permitted or denied. So Lakewood talked about this specifically in that they said the unbridled discretion analysis does not apply any time a law gives government officials discretion. And the example that they used were building codes. If, say, a newspaper were to apply for a building code, they could not then say this is an unbridled discretion because there's discretion for the government persons there. In this case, the only way that this court should do unbridled discretion analysis is if the law is narrowly and specifically tailored at conduct associated with expression. That's the Lakewood standard. Now, the reason why this law isn't narrowly and specifically tailored at conduct relating to expression is because Indiana's other laws, its emergency law and its forcible interference with police law, do not actually cover the activity that this law is trying to protect against. What do we do if we remove it out of the unbridled discretion theory, accept the state's position that this is actually a content neutral law and move it under O'Brien? Yes, Your Honor. If we move this under O'Brien, this law is clearly focused on the state's purposes to protect police officers in performing their lawful duties. So, for example, if a police officer is responding to someone who's having a mental health crisis and the police officer hears someone coming up behind them while they're trying to respond to the person with the mental health crisis, they can say, hey, I need you to stay 25 feet away while I'm dealing with this. The state has an interest in police officers being able to conduct their duties without having their attention divided. So if, for example, a police officer is directing traffic at an event, he needs to be able to pay attention to the cars that are coming, to the pedestrian traffic that's occurring, and he might say, hey, I need everyone to stay 25 feet away from me so that I can focus my attention on the citizens that I'm supposed to be keeping safe in this instance. Now, and then the question is whether or not this law is then a fit to the means of the government in this instance under O'Brien. And here it is, because it's limited to a 25-foot zone, which is a relatively short zone that the district court found, the distance to a three-point line in an NBA basketball court, the distance between an average two-car garage. It's about the distance from the front of the gallery to this bench, a distance that can very quickly be traversed by someone who's coming towards a police officer when the police officer needs the opportunity to keep his or her attention focused on the matter in front of them. Mr. Falk has brought up, though, badge numbers, hearing conversations, the Schenck case indicating that would not be enough. It's not going to be the same as being 8 feet away or 10 feet away, correct? Certainly, Your Honor. And I think there are three reasons why that type of analysis isn't helpful here when we're looking at a facial challenge. So the first issue here is that the question under the Schenck case was whether or not the participants could participate in a conversation with people. Here Mr. Nicodemus hasn't asserted any right to participate in a conversation with the police officers or with their witnesses. Second, Alvarez says that the right to record is not unlimited, and Alvarez specifically points out, relying on the principles of an expectation of privacy from Katz, that there must be the ability for police officers to have private conversations. So, for example, the right to record does not mean, under Alvarez, that someone may come and put their phone directly in the face of a rape victim while she is talking to a police officer. But isn't there already protection for that? That the officer in Indiana, in that instance, that hypothetical that you just provided, they can declare, based on this criminal investigation, I need you to move back. You cannot put your camera in the face of this victim because I am actively engaged in an investigation. And so I guess that's where the rub is in that example, is that that already exists. That may exist, Your Honor. It's not clear under the emergency law whether that would be an appropriate application of that law because the emergency law specifically talks about when there is a location, like a fire or a car accident or a hazmat spill, where an officer can say, hey, I need everyone to get back. And that simply is not, and so that may or may not happen if, let's say a police officer encounters someone who's in distress outside and the person starts speaking and the officer is trying to determine what's going on. The officer might not have established, I am doing an official investigation here right now that would be protected under the emergency law, but still needs to be able to focus her attention on the person that she is supposed to be assisting in that moment without that divided attention. Ms. Lawrence, same question I posed to Mr. Falk. We have a ruling from the district court here on substantial overbrief. Yes, sir. We have arguments in the district court and then here with regard to intermediate scrutiny and broader discretion, et cetera. What is the state's position with regard to the review of the district court decision on the analysis of substantial overbrief? Well, of course this court would review de novo any legal conclusions of the district court and can affirm the district court for any reason that is within the record. I appreciate Mr. Falk's response, which was there's overlap here, but specifically here we're talking the debate we're having, the discussion we're having is somewhat different than was had at the district court. Perhaps, Your Honor, but at the end of the day the question is whether or not this law actually first regulates conduct or speech, which the district court found that it regulated for the most part conduct. If there are instances where it does implicate First Amendment rights, those can be brought as applied challenges. This isn't opening the door for a total carte blanche, but instead it's saying as a facial matter this is regulating conduct. But then second, under whether or not this right to record is an infinite right, there's nothing in Alvarez that says the right to record has to be eight feet away or ten feet away or four feet away. Rather, Alvarez says there's a right to record generally. And nothing in the law says that Mr. Nicodemus has to stop recording. It just says that in some instances police officers may say, I need you to stay 25 feet away while I'm doing my official duties in a way so that my attention is not divided between what is happening in front of me and people in the dark in a situation where you don't know what's going on. That is the purpose of the law, and that is the factual finding that the district court used that is helpful to decide this case here. Thank you, Ms. Lawrence. We'll move to Mr. Smith. You'll have your full minute and a half. May it please the court, Joseph Smith for the city of South Bend. The city agrees with the arguments of the state that the statute is constitutional and the court should affirm on that basis. Additionally, as to the city of South Bend, the court should affirm because there is no South Bend policy at issue here. The policy at issue here is a policy of the state of Indiana. Plaintiff has relied on the Bethesda Lutheran opinion in support of the proposition that a government entity is liable any time one of its employees does something that a state statute says they are allowed to do. The Bethesda Lutheran decision, excuse me, the discussion on that issue is dicta and it is wrong. It is dicta because Bethesda Lutheran was a compelled action case, not an authorized action case. So the court had no occasion to say in that case what the rule would be in an authorized action case such as this. Snyder v. King, also cited by plaintiff, is the same. It was a compelled action case, not an authorized action case. It is dicta as well. The Second Circuit has already recognized that the Bethesda Lutheran discussion of the authorized action versus compelled action issue is dicta, and that was in Vive's v. City of New York, 524F336, which we did cite to the district court. The Bethesda Lutheran dicta is wrong because that is not what was said in surplus store, as we've said in the brief, and I see I am already out of time. If there are no more questions, or no questions at all, the court should affirm for the City of South Bend both on the First Amendment and on Monell. Thank you very much, Mr. Smith. Mr. Falk, we'll give you two minutes on rebuttal. Thank you. You're welcome. The bottom line, Your Honors, is that the statute here allows people to legally push back a way for no reason whatsoever. The state can hypothesize reasons why you may not want to be able to get close to the police, valid reasons. I would submit that many of those are already covered by existing Indiana law. If they're not, then Indiana should pass a law that narrowly deals with that. Alvarez. Would resisting law enforcement not cover that, though? I'm sorry? Indiana resisting law enforcement. Interfering with a criminal investigation. That requires force, Your Honor. So I don't know. But the point, of course, is the legislature knows how to pass laws, and they could pass a tailored law. Alvarez requires that there be a reasonably close fit between means and ends under intermediate scrutiny. There isn't that fit here. We know what the end is. We all agree it's a valid end. But there's not that fit. And I don't think it makes any difference once we get to O'Brien versus Ward whether we're talking about conduct or speech. But I would remind the court that this court in Kemp recognized that the right to record necessarily includes the right to approach and observe. All of that is part of the process that creates speech. And all of that is disrupted and interfered with by this statute. And I would just say at the very end, concerning the Minnell argument, obviously it's somewhat academic. The state's here as a party. But the distinction that was drawn has been drawn by this court and many other courts, I believe, is between being compelled to act by a statute or being authorized. South Bend's not compelled. It has decided to use this statute. It is, therefore, subject under Minnell to liability. Thank you. Thank you, Mr. Falk. Thank you, Ms. Lawrence. Thank you, Mr. Smith. And with that, the case will be taken under advisement.